```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF MINNESOTA
                Civil No. 04-2674(DSD/SRN)
```

Westport Insurance Corporation,

       Plaintiff,

v.                                                      **ORDER**

Endres Processing, LLC,
Lawrence Bohmbach Insurance
Agency, Inc., and John P. Lewis,

       Defendants.

    Rolf E. Sonnesyn, Esq., Bryan B. Carroll, Esq. and Tomsche, Sonnesyn & Tomsche, P.A., 610 Ottawa Avenue North, Minneapolis, MN 55422, counsel for plaintiff.

    Craig M. Roen, Esq. and Faricy & Roen, 333 South Seventh Street, Minneapolis, MN 55402, counsel for defendant Endres Processing.

    George F. Vogel, Esq. and Vogel & Gorman, P.O. Box 39, Fourth Street & East Avenue, Red Wing, MN 55066 and Theodore J. Smetak, Esq., Richard K. Besonen, Esq. and Arthur, Chapman, Kettering, Smetak & Pikala, 81 South Ninth Street, Minneapolis, MN 55402, counsel for Lawrence Bohmbach Insurance Agency.

This matter is before the court upon plaintiff's motion for summary judgment. Based upon a review of the file, record and proceedings herein, and for the reasons stated, the court grants plaintiff's motion in part and denies its motion in part.

**BACKGROUND**

This is a declaratory judgment action for the rescission of insurance contracts. Plaintiff Westport Insurance Corporation ("Westport") is incorporated in Missouri and insures, among other things, insurance agencies in Minnesota. During the relevant period, Westport provided professional liability insurance to defendant Lawrence Bohmbach Insurance Agency, Inc. ("LBA"), a Minnesota corporation. In 2002, defendant Endres Processing, L.L.C. ("Endres") brought suit against LBA in Minnesota state court for negligent failure to advise Endres of the proper limits for business interruption insurance. Endres' claims arose primarily from the actions of LBA and LBA president Jay Bohmbach. Westport later rescinded LBA's professional liability insurance policies, alleging that LBA made misrepresentations in its renewal applications from 1997 through 2003. Westport now seeks a declaratory judgment that the policies are effectively rescinded.

LBA's alleged misrepresentations concern defendant John P. Lewis, an insurance agent employed by LBA since 1996. From 1989 to 1996, Lewis worked in Iowa for American Family Insurance Group ("American Family"). In January of 1996, Lewis submitted his resignation effective March 15, 1996. American Family informed Lewis that it would not pay him termination compensation. Lewis indicated that he would withhold remaining premiums until American Family provided him an explanation for not paying such

compensation. American Family responded by filing a complaint with the Insurance Division of Iowa ("IDI") on March 14, 1996. On March 15, Lewis prepared an itemized list of premium payments that he had not forwarded to American Family. (See Lewis Dep. Ex. 9.)

IDI sent Lewis a letter and notice of hearing scheduled for April 15, 1996. The letter indicated that IDI fully intended to urge the administrative law judge to impose the maximum license revocation and fine. On the other hand, the notice of hearing indicated that the hearing's purpose was to determine whether Lewis engaged in inappropriate conduct warranting suspension or revocation of his license.

The hearing never took place. Rather, Lewis and IDI agreed to a consent order "without admission as to the truth or falsity of the allegations made against [Lewis] by [IDI]." (Lewis Dep. Ex. 6.) Dated May 8, 1996, the order terminated Lewis' Iowa insurance agent license and prohibited him from reapplying to sell insurance in Iowa. Lewis alleges that he stipulated to the consent order because he already planned to move to Minnesota and had begun working for LBA on May 1. He also believed that as part of the stipulation he would get a letter of clearance from IDI to facilitate his Minnesota license application. However, the letter of clearance stated that Lewis was not in good standing and "had administrative action that resulted in his surrending [sic] his license." (Id. Ex. 17.) Although Lewis passed the Minnesota

licensing exam and attempted to explain his situation to the Minnesota Department of Commerce, it refused to issue him a license.

Bohmbach agreed to help Lewis obtain a license. Bohmbach called Westport agent Shelly Waldhauser and informed her of "another agent ... who was having trouble with his license as a result of some allegations by American Family related to his agency activity in the State of Iowa." (Bohmbach Aff. ¶ 9.) Waldhauser does not remember the conversation and asserts that the licensing problems of "another agent" would not indicate an agent hired or retained by LBA. (Waldhauser Aff. ¶¶ 3-5.) Through an alleged referral from Waldhauser, Bohmbach eventually found an attorney to represent Lewis. After further communications with the Minnesota Department of Commerce, an agreement was reached. On November 22, 1996, Lewis consented to an order granting him a license subject to restrictions including supervision by Bohmbach. The restrictions were to remain effective for two years. Over three years later, Lewis reapplied for a non-resident Iowa insurance provider license. He was granted the license subject to one year of unsupervised probation.

Around March of every year from 1997 to 2002, LBA completed renewal applications for its professional liability insurance

provided by Westport. The applications included questions concerning disciplinary action against its agents. In 1997 and 1998, the application presented the following question:

> During the past policy period, has any owner, officer, director, partner, employer or solicitor of the firm been the subject of disciplinary action by any insurance regulatory authority?

(Lewis Dep. Exs. 27-28.) LBA answered "no" both times. The renewal applications for 1999 and 2000 presented a slightly different question that included complaints filed and did not limit the inquiry to the past policy period:

> Has any past or present owner, officer, partner, employee or solicitor been the subject of complaints filed and/or disciplinary action by any insurance regulatory authority?

(Id. Exs. 29-30.) LBA again answered "no" both times. The 2001 and 2002 renewal applications then limited the inquiry to the previous policy period:

> Since the last renewal, has any owner, officer, director, partner, employee or solicitor of the firm been the subject of complaints filed and/or disciplinary action by any insurance regulatory authority?

(Lewis Dep. Exs. 24-25.) LBA again answered "no" both times. All renewal applications included the requirement that LBA report any changes that occur after the date of the application.

Westport's General Underwriting Guidelines of 2000 allow coverage if disciplinary action has been resolved in favor of the

5

insured and the underwriter decides that the risk appears sound in all other respects. (Shackleford Dep. at 49-50.) Mark Shackleford, Senior Underwriter for Westport's Insurance Industry Professional Liability unit, testified that if Westport had known about Lewis' licensing problems, they still would have provided insurance coverage to LBA while excluding Lewis. (Id. at 96, 107.)

On March 5, 2004, Westport purportedly rescinded LBA's insurance policies from 1997 through 2003. (See Besonen Aff. Ex. A.) Westport alleged that LBA made misrepresentations in the renewal applications, citing the above application questions and referring to the 1996 consent orders entered into by Lewis. On May 13, 2004, Westport filed this action, seeking a declaratory judgment that LBA's professional liability policies are effectively rescinded and that Westport does not provide indemnity or defense to LBA or Lewis. Westport now moves for summary judgment on its claims.

### DISCUSSION

**I.   Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled

to a judgment as a matter of law." In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324.

**II. Rescission**

Westport alleges that it can rescind the policies because LBA made material misrepresentations when it answered "no" to the policy renewal application questions concerning disciplinary action. An insurer may rescind or avoid a policy if "there was material misrepresentation, material omission, or fraud made by or with the knowledge of the insured in obtaining the contract or in pursuing a claim under the policy." Minn. Stat. § 60A.36, subd.

7

5(a). A misrepresentation is material if it either (1) increases the risk of loss to the insurer or (2) is made with intent to deceive or defraud. Minn. Stat. § 60A.08, subd. 9. "[W]hether a misrepresentation increased the risk of loss is a question for the trier of fact 'unless the evidence is conclusive one way or the other.'" Buller v. Minn. Lawyers Mut., 648 N.W.2d 704, 711 (Minn. Ct. App. 2002) (citing Transamerican Ins. Co. v. Austin Farm Ctr., Inc., 354 N.W.2d 503, 506 (Minn. Ct. App. 1984)). The insurer has the burden of proof on all issues of fact relevant to an alleged misrepresentation. Preferred Risk Mut. Ins. Co. v. Anderson, 152 N.W.2d 476, 481 (Minn. 1967).

The construction of terms in an insurance application and policy is a question of law. See Soo Line R.R. Co. v. Brown's Crew Car of Wyo., 694 N.W.2d 109, 113 (Minn. Ct. App. 2005); Hammer v. Investors Life Ins. Co. of N. Am., 473 N.W.2d 884, 892 (Minn. Ct. App. 1991). Terms not defined in an insurance policy are given their ordinary meaning. Lhotka v. Ill. Farmers Ins. Co., 572 N.W.2d 772, 774 (Minn. Ct. App. 1998). However, any ambiguity in policy terms is construed against the insurer and in favor of the insured.[1] Minn. Prop. Ins. v. Slater, 673 N.W.2d 194, 199 (Minn.

---

[1] Westport argues that this construction doctrine should not apply because LBA had more bargaining power in negotiating the policies than the usual insured. However, the court must construe language in the renewal application questions, over which LBA likely had no influence. Therefore, Westport's argument fails.

Ct. App. 2004). "An ambiguity exists when a word or phrase in an insurance policy is reasonably subject to more than one interpretation." Id. at 199.

The relevant questions in the renewal applications asked whether any agents had been the "subject of disciplinary action by any insurance regulatory authority" or the "subject of complaints filed and/or disciplinary action by any insurance regulatory authority." (Lewis Dep. Exs. 24-25, 27-30.) Westport maintains that the consent orders and license restrictions against Lewis should have been disclosed by LBA because the license suspension and other restrictions are "disciplinary actions." Defendants argue, however, that Lewis' license restrictions were not punitive and therefore not "disciplinary action," pointing to the fact that no agency ever found him in violation and he consented to all restrictions.

The court first analyzes whether the ordinary meaning of "disciplinary action" is limited only to punitive actions. "Disciplinary" means "designed to correct or punish breaches of discipline." Webster's Third New International Dictionary 644 (1993). Because this definition includes both coercive and punitive elements, defendants' limited interpretation must be rejected. On the other hand, the definition of "disciplinary" is not broad enough to support an interpretation that includes any restriction or regulatory action. See Utica Mut. Ins. Co. v.

9

Stockdale Agency, 892 F. Supp. 1179, 1202-03 (N.D. Iowa 1995) (not all regulatory actions are disciplinary actions). Westport even admits that disciplinary action is only "one form of regulation." (Pl.'s Reply Mem. Supp. Summ. J. at 4.) The insurance policy renewal applications do not suggest that the term "disciplinary action" should encompass anything other than the ordinary meaning discussed above. For these reasons, the court finds that the unambiguous, ordinary meaning of "disciplinary action" is limited to coercive or punitive action.

The action taken by IDI against Lewis was disciplinary action for at least two reasons. First, license suspension and a prohibition against reapplying for a license strongly suggest coercive or punitive ends. Second, Westport has shown that IDI intended its actions to be disciplinary. It is undisputed that IDI responded to American Family's complaint of agent misconduct by scheduling a hearing and sending a notice to Lewis. While Lewis did not admit to violating any rules of conduct, he did freely admit to withholding premiums at that time. (See Lewis Dep. Ex. 9.) As a result, IDI "fully intend[ed]" to advocate for the maximum revocation and fines if they "prevail[ed] at the hearing." (Id. Ex. 10.) IDI's expressed intention and adversarial stance show that IDI sought to correct or punish Lewis' behavior by, for example, coercing him to return the premiums or discouraging such behavior in the future. Defendants have not identified any other

reason for IDI's position and actions. Contrary to defendants' argument, Lewis' consent to IDI's actions did not remove the disciplinary nature of those actions. Based on all of the above, the court finds that Lewis was the subject of disciplinary action by IDI in 1996. LBA's representation to the contrary was false.[2]

A few months later, the Minnesota Commissioner of Commerce was "prepared to deny [Lewis'] application for licensure in that [Lewis] failed to promptly remit insurance premiums to an insurer, and failed to promptly deliver premium refunds to several insureds in the State of Iowa." (Lewis Dep. Ex. 11.) Thus, Lewis' behavior also resulted in the consent order and license restrictions in Minnesota. However, it is less clear that the license restrictions were designed to correct or punish Lewis' behavior. Lewis had already experienced heavy sanctions in Iowa, and the license restrictions in Minnesota were merely probationary. Further, Lewis' inappropriate behavior had already ceased. A reasonable jury could conclude from the evidence that the probationary license was a preventative or precautionary measure not designed to correct or punish. Similarly, Lewis' probationary status in Iowa in 2000

---

[2] Defendants rely heavily upon the holding in Utica to argue that Lewis was not subject to disciplinary action. However, Utica involved a cease and desist order issued to an insurance company, not a license suspension imposed on an individual agent. See 892 F. Supp. at 1186-87. Further, the court in Utica construed "disciplinary" to include only punitive measures and not measures that are either coercive or punitive. See id. at 1203. For these reasons, the conclusions in Utica concerning the construction of "disciplinary" are not particularly instructive.

could have been a mere preventative measure and not "disciplinary action."  Therefore, disputed issues of material fact preclude summary judgment on whether Lewis' later license restrictions qualified as "disciplinary action."

Although the court finds that LBA made a misrepresentation concerning Lewis' license problems in Iowa in 1996, the court finds that genuine issues of fact preclude summary judgment on the issue of materiality.  In particular, the court finds that Shackleford's testimony and Westport's policy concerning coverage in light of resolved disciplinary actions are not necessarily consistent and do not conclusively establish that the misrepresentation increased the risk of loss.  Further, disputed facts preclude a determination whether Westport had actual or constructive knowledge of the disciplinary action against Lewis.

## CONCLUSION

Based upon the file, record and proceedings herein, and for the reasons stated, **IT IS HEREBY ORDERED** that plaintiff's motion for summary judgment [Docket No. 19] is granted in part and denied in part.

Dated: May 25, 2005

                                                 s/David S. Doty
                                                 David S. Doty, Judge
                                                 United States District Court